Feinberg v Marathon Patent Group Inc. (2021 NY Slip Op 02452)





Feinberg v Marathon Patent Group Inc.


2021 NY Slip Op 02452


Decided on April 22, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 22, 2021

Before: Acosta, P.J., Renwick, Singh, Moulton, JJ. 


Index No. 651463/18 Appeal No. 13651-13651A Case No. 2020-04269, 2020-04270 

[*1]Jeffrey Feinberg et al., Plaintiffs-Appellants,
v
Marathon Patent Group Inc. et al., Defendants-Respondents.


Robbins LLP, San Diego, CA (Stephen J. Oddo of the bar of the State of California, admitted pro hac vice, of counsel), for appellants.
Troutman Pepper Hamilton Sanders, LLP, New York (Meredith Sherman of counsel) and Troutman Pepper Hamilton Sanders, LLP, Irvine, CA (Howard M. Privette of the bar of the State of California, admitted pro hac vice, of counsel), for Marathon Patent Group, Inc. and Doug Croxall, respondents.
White & Case LLP, New York (Gregory M. Starner of counsel), for Francis Knuettel II, respondent.



Orders, Supreme Court, New York County (O. Peter Sherwood, J.), entered on or about March 13 and 18, 2020, which granted the motions to dismiss brought by defendants Marathon Patent Group, Inc. and Douglas Croxall and by defendant Francis Knuettel II, unanimously affirmed, with costs.
Between May 2014 and early 2016, plaintiff Jeffrey Feinberg (Feinberg) acquired substantial shares of stock of defendant Marathon Patent Group, Inc. (Marathon), a publicly traded company that acquires and monetizes patents through litigation and licensing strategies.
In March 2016, after Marathon reported poor financial results for 2015, Feinberg began to liquidate his position by selling 202,018 shares of Marathon common stock between April 19, 2016 and May 12, 2016. On May 12, 2016, Marathon reported improved financial results for the first quarter of 2016, and Feinberg halted his stock sales. Throughout the rest of 2016, Marathon touted the strength of its financial condition and its ability to monetize its portfolio of intellectual property assets to investors, including Feinberg.
In December 2016, Marathon sought to raise additional funds for its operations, including by having defendants Francis Knuettel (Knuettel) and Douglas Croxall (Croxall), the former Chief Financial Officer and former Chief Executive Officer of Marathon respectively, directly solicit Feinberg's investment in a public offering (the 2016 Offering) based on representations in the offering documents and their oral communications as to Marathon's financial condition and business prospects - representations that Feinberg relayed to plaintiff Terrance Ankner (Ankner).
Following those solicitations, Feinberg, as trustee of the Feinberg Personal Trust, purchased 1,000,000 shares of Marathon common stock at $1.50 per share, and Ankner, in his capacity as trustee of the Jeffrey L. Feinberg Family Trust, purchased 333,333 shares of Marathon common stock for $1.50 per share, as part of the 2016 Offering, pursuant to a Securities Purchase Agreement. After the 2016 Offering was consummated, Feinberg had additional discussions with Marathon concerning Marathon's performance and the representations it made in connection with the 2016 Offering.
In March 2017, Marathon reported to investors on a conference call that it had positive revenue expectations and no plans for a capital raise. However, on April 18, 2017, Marathon announced that it had agreed to sell 3,800,000 shares of common stock to institutional investors in order to raise "working capital." Following that announcement, Marathon's stock price dropped 22.9% from $0.83 per share to $0.64 per share. On May 15, 2017, Marathon announced that it had generated $78,000 in revenue during the first quarter of 2017, and two days later revealed that it was at risk of being delisted from the NASDAQ.
After those announcements, plaintiffs Feinberg and Ankner, during the remainder of May and into June 2017, liquidated all Marathon holdings under their [*2]ownership or control and realized millions of dollars in losses.
In March 2018, plaintiffs commenced this action. The first three causes of action in the amended complaint assert violations of section 11 of the Federal Securities Act of 1933 (the Securities Act) in connection with statements in Marathon's registration statements filed with the Securities Exchange Commissions (SEC), for violations of section 12(a)(2) of the Securities Act in connection with statements in a Marathon prospectus or oral statements made by Marathon, and for violations of section 15 of the Securities Act (liability for controlling individuals). The fourth through sixth causes of action sound in fraud and fraudulent concealment, constructive fraud, and negligent misrepresentation based on defendants alleged misleading statements designed to induce plaintiffs to hold the shares they already owned, to increase their investment by participating in the 2016 Offering, and to further dissuade them from selling their open market shares and interests in the 2016 Offering.
Supreme Court granted the motions to dismiss plaintiffs' complaint in its entirety. Plaintiffs appeal.
At issue on this appeal is the proper pleading standard when assessing the sufficiency of claims under section 11, section 12(a)(2), and section 15 of the Securities Act. Initially, we disagree with Supreme Court that mere reliance on the statutory language of the Securities Act (material "omissions"; "untrue" statements of material fact) requires application of the CPLR 3016(b)'s heightened pleading standard. In our view, claims based on the Securities Act should not be seen through the prism of fraud and/or misrepresentation. This approach is consistent with the one taken by federal courts in interpreting similar claims brought under the Securities Act. Federal courts have held that since fraud is not an element or a prerequisite to such a claim, ordinary notice pleading standards apply (see Litwin v Blackstone Group., L.P., 634 F3d 706, 716 [2d Cir 2011], cert denied 565 US 878 [2011]; Rombach v Chang, 355 F3d 164, 171 [2d Cir 2004]; NECA-IBEW Health & Welfare Fund v Goldman Sachs & Co., 693 F3d 145, 157 [2d Cir 2012]; Lindsay v Morgan Stanley [In re Morgan Stanley Info. Fund Sec. Litig.], 592 F3d 347, 358 [2d Cir 2010]). We are persuaded by this reasoning and hold that the heightened pleading standard should not have been applied to plaintiffs' Securities Act claims because they are not premised on common-law fraud (see Litwin, 634 F3d at 716, NECA-IBEW Health., 693 F3d at 157).
Nonetheless, applying the proper pleading standard, we find that the complaint does not adequately state the section 11 and section 12 Securities Act claims for failure to disclose information required to be disclosed under SEC Items 303 and 503 and based on the alleged oral solicitation communications by the individual defendants. The Section 15 claim for "control liability" was also correctly dismissed, as that claim is dependent [*3]on the existence of an underlying Securities Act claim (see Fait v Regions Fin. Corp., 655 F3d 105, 109 n2 [2d Cir 2011]).
We also find that the court correctly dismissed the state law claims for common-law fraud and negligent misrepresentation, which are "holder" claims based on alleged fraudulent and/or negligent misrepresentations that caused plaintiff Feinberg to refrain from selling shares of defendants' stock. We conclude that New York law is the proper law to apply based on the interests analysis. Under our precedents, holder claims "violate the 'out-of-pocket' rule governing damages recoverable for fraud, and are not actionable" (see Varga v McGraw Hill Fin., Inc., 147 AD3d 480, 481 [1st Dept 2017], lv denied 29 NY3d 908 [2017]). Were we to apply California law, we would find that the holder claims fail to meet the heightened pleading requirements California courts have imposed on such claims (see Small v Fritz Cos., Inc., 30 Cal 4th 167, 184 [Cal 2003]).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 22, 2021